**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID R. HAWKINS,
Plaintiff-Appellant,

v.                                                            No. 97-1684

ANDREA L. STABLES,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-96-1040-3)

Argued: May 6, 1998

Decided: July 1, 1998

Before ERVIN, WILKINS, and WILLIAMS, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Ervin and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** Neil Kuchinsky, Colonial Heights, Virginia, for Appel-
lant. Peter Dean Eliades, Hopewell, Virginia, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

David Hawkins appeals the district court's ruling barring Andrea Stables's attorney from testifying on the grounds of attorney-client privilege. He claims that the privilege was impliedly waived when Stables answered a question regarding advice the lawyer had given her during a deposition. We agree that the district court misapplied the law of privilege and must be reversed. The law of attorney-client privilege places the burden of proof on the proponent of the privilege. The district court, however, assumed that the privilege applied and placed the burden of proof on the opponent of the privilege. Because the proponent, Stables, testified under oath that no confidential communication had occurred, it is impossible for her to meet the burden of proof. We, therefore, reverse the decision of the district court and remand for further proceedings consistent with this opinion.

I.

David Hawkins and Andrea Stables are former spouses. They divorced in February of 1993. Hawkins alleges that in January 1996, Stables began to visit Hawkins's house and converse with Robin Cox, his girlfriend. Hawkins further alleges that during these conversations, Stables revealed to Cox that during a period from May through October 1991, before Hawkins and Stables had separated, she had placed a wire tap on the home telephone and recorded Hawkins's phone conversations. Cox reported that during the conversations she had with Stables, Stables stated that she had gleaned "damaging" information about Hawkins from the phone tap.

II.

As a result of the conversations that occurred between Stables and Cox, Hawkins filed a complaint on December 31, 1996, in the district court under 18 U.S.C.A. § 2520 (West Supp. 1998), claiming that Stables had disclosed information obtained during an illegal wiretap and requesting statutory damages of $10,000.[1]

_____

**1** 18 U.S.C.A. § 2520 states in pertinent part:

> (a) [A]ny person whose wire, oral, or electronic communica-

2

At a deposition on March 20, 1997, Stables answered many questions, including the following:

> Q: Is it true or not that Larry Diehl, in his capacity as your [divorce] attorney, told you to take a wiretap off the phone at the marital residence?
>
> A: No, sir. Because I wouldn't have discussed that with him, since it didn't happen. So, therefore, he would have no need to make mention of that to me.

(J.A. at 119-A5 -- 119-A6.) Although Stables was represented by counsel during the deposition, no objection on the ground of attorney-client privilege was lodged.

_____

> tion is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.
>
> (b) [A]ppropriate relief includes --
>
> (1) such preliminary and other equitable or declaratory relief as may be appropriate;
>
> (2) damages under subsection (c) and punitive damages in appropriate cases; and
>
> (3) a reasonable attorney's fee and other litigation costs reasonably incurred.
>
> (c) Computation of damages. --
>
> . . . .
>
> (2) [T]he court may assess as damages whichever is the greater of --
>
> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
>
> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

3

The case proceeded to a one-day bench trial which was held on May 19, 1997. During her trial testimony Stables indicated that she considered any conversation she had with her divorce attorney, Diehl, to fall within the attorney-client privilege, and she refused to waive the privilege. Nevertheless, because evidence of the existence of the wiretap on Hawkins's phone was scant, Hawkins called Diehl as a witness because it was possible that Diehl could corroborate the existence of the phone tap. Hawkins's trial counsel asked Diehl whether Stables's trial testimony, reiterating her deposition testimony, had been truthful. Stables's counsel raised an objection to the question, and Diehl refused to answer the question on the ground that the attorney-client privilege protected the information from disclosure, and Virginia disciplinary rules regarding revelation of client confidences required that he not divulge that information. In response to the objection and Diehl's refusal to testify, Hawkins's counsel argued that Stables's deposition testimony waived the privilege. The district court, however, ruled that the attorney-client privilege had attached to the communication between Stables and Diehl and that it had not been waived.

After the close of the evidence, the district court issued a Memorandum Opinion addressing Hawkins's claim in which it determined that Hawkins had failed to prove his case by a preponderance of the evidence. More specifically, the district court determined that Cox was a biased witness with a weak memory and that no other evidence had been presented during the course of the trial to buttress Hawkins's contention that any wiretap had existed during his marriage to Stables.

Hawkins filed a timely notice of appeal. On appeal he asserts that the district court erred when it ruled that Diehl's testimony fell under the protection of the attorney-client privilege. [2]

_____

[2] Hawkins also asserts three other assignments of error in his brief: (1) that Diehl was ethically bound to notify the district court if Stables had committed perjury; (2) that the district court misconstrued the testimony of David Hawkins, Jr.; and (3) that the district court's opinion is not supported by the evidence. Based upon our disposition of the attorney-client privilege issue, however, we need not address these issues because they may become moot on remand.

III.

A.

We review attorney-client privilege determinations by district courts under a two-fold standard of review. See Better Gov't Bureau v. McGraw, 106 F.3d 582, 601 (4th Cir. 1997), cert. denied, 118 S. Ct. 689 (1998). If the district court's ruling below rests on findings of fact, we review for clear error. See id. If, however, the district court's decision rests on legal principles, we apply the de novo standard of review. See id. Here, the district court did not hinge its conclusion on factual findings; therefore, we review the decision de novo.

A proper analysis of privilege questions must begin with a determination of the applicable law. Federal Rule of Evidence 501 addresses that issue:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501; see also Jaffee v. Redmond , 518 U.S. 1, 8 (1996).

The current matter is a civil case based upon a federal cause of action, 18 U.S.C.A. § 2520 (West Supp. 1998). Therefore, following the mandate of Rule 501, we must apply "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," Upjohn Co. v.

5

United States, 449 U.S. 383, 389 (1981); see also United States v. Aramony, 88 F.3d 1369, 1389 (4th Cir. 1996), cert. denied, 117 S. Ct. 1842 (1997), and "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out," Trammel v. United States, 445 U.S. 40, 51 (1980). The protection of "full and frank" communication between lawyer and client"encourages observance of the law and aids in the administration of justice." Commodities Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985). Therefore, when the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure. See United States v. (Under Seal), 748 F.2d 871, 874 (4th Cir. 1984) (stating that attorney-client privilege protects from revelation the substance of confidential client communications), vacated in part on other grounds, 757 F.2d 600 (4th Cir. 1985). The privilege, however, "`impedes [the] full and free discovery of the truth.'" In re Grand Jury Proceedings, 727 F.2d 1352, 1355 (4th Cir. 1984) (alteration in original) (quoting Weil v. Investment/Indicators, Research & Management, 647 F.2d 18, 24 (9th Cir. 1981)); see also United States v. Nixon, 418 U.S. 683, 710 (1974) (noting that the privilege stands "in derogation of the search for truth"). Therefore, the attorney-client privilege is to be narrowly construed, see United States v. Oloyede, 982 F.2d 133, 141 (4th Cir. 1993) (noting narrow construction of privilege); In re Grand Jury Subpoenas, 902 F.2d 244, 248 (4th Cir. 1990) (same); In re Grand Jury Proceedings, 727 F.2d at 1355 (same), and recognized "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth," Trammel, 445 U.S. at 50 (internal quotation marks omitted).

This Circuit has adopted the "classic test" for determining the existence of attorney-client privilege:

> "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed

6

(a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (Mass. 1950)). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." Jones, 696 F.2d at 1072.

B.

After reviewing the record of the bench trial that occurred in this matter, it is obvious that the requisite elements of the attorney-client privilege were not fully examined by the district court or by counsel. The district court assumed from opening arguments onward that any conversation that had occurred between Diehl and Stables regarding a phone tap was privileged. The district court interrupted Hawkins's counsel during his opening statement and said, "[Y]ou have got a problem . . . if the discussion . . . of the wiretapping took place with the lawyer and he said take it off the line, that would remain privileged." (J.A. at 22-23.) Later, when Diehl had taken the stand to give testimony, the district court stated, "[t]he issue before us is whether or not there is any reason for the Court to pierce this privilege that exists and has not been waived." (J.A. at 66.) Hawkins's counsel, too, assumed that the privilege applied, and argued in response to the objections at trial only that the privilege had been waived.

The district court misplaced the burden in this case. The burden of proving that a communication falls under the attorney-client privilege rests on the proponent of the privilege. See Jones, 696 F.2d at 1072. Here, rather than requiring Stables to prove the elements of the attorney-client privilege, the district court assumed that it applied, and placed the burden on Hawkins to disprove its applicability. This realignment of the burden of proof not only harmed Hawkins's case below, but it also harms Stables's case on appellate review.

7

As is clear from Circuit precedent, the attorney-client privilege does not protect all aspects of the attorney-client relationship, it protects only confidential communications occurring between the lawyer and his client. For the privilege to apply, "the communication claimed to be privileged must have been made in confidence." 26A Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5722 at 514-15 (1992) (internal quotation marks omitted).

Although there is generalized evidence contained in the record that Stables communicated with Diehl regarding her divorce, there was no specific evidence presented that they ever had a conversation, much less a confidential communication, regarding a possible wiretap. Indeed, if Stables's deposition and trial testimony are credited, there is evidence on the record that no communication on this subject ever occurred.

Although the question asked during the deposition clearly elicited information regarding confidential communications Stables may have had with Diehl, and was objectionable on its face on the ground of attorney-client privilege, neither Stables nor her attorney asserted an objection. In response to the question, Stables simply stated that she never had a discussion of the matter with her attorney. By answering the question as she did, Stables both waived her privilege and provided probative evidence that she had had no conversation with her attorney on the subject of a phone tap.[3] Without a communication, there is nothing to which the privilege can attach. Based on her own testimony, Stables cannot meet her burden of proof. [4]

_____

[3] Stables never claimed during trial that the failure to raise an objection was an error, or that her deposition testimony was incorrect. Instead, she reiterated that no communication on that subject had occurred. Stables asserted the attorney-client privilege only to the extent that it would prevent Diehl from testifying.

[4] Proof of the attorney-client privilege requires that the proponent make a showing on multiple issues. Even if Stables could produce sufficient evidence to convince the district court on remand that she and Diehl had a confidential conversation regarding a phone tap, the attorney-client privilege would not apply because her testimony during deposition and trial waived it.

IV.

Because we conclude that the district court committed prejudicial error when it disallowed Diehl's testimony on the subject of the

_____

The client is the holder of the attorney-client privilege, see In re Grand Jury Proceedings, 727 F.2d 1352, 1355-56 (4th Cir. 1984) (noting that the client must claim the privilege), and can waive it either expressly, or through conduct, see Richard L. Marcus, The Perils of Privilege: Waiver and the Litigator, 84 Mich. L. Rev. 1605, 1615-1626 (1986). The latter type of waiver is referred to as "implied waiver." See generally, 26A Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5722 (1992). As a general rule, implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege. See Sheet Metal Workers Int'l Assoc. v. Sweeney, 29 F.3d 120, 125 (4th Cir. 1994) (noting that any voluntary disclosure to a third party waives the privilege); United States v. Oloyede, 982 F.2d 133, 141 (4th Cir. 1993) (same); In re Martin Marietta Corp., 856 F.2d 619, 623 (4th Cir. 1988) (same); In re Grand Jury Proceedings, 727 F.2d at 1357 (same); United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (same). Such a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege. See Wright & Graham, supra at § 5722.

Furthermore, such a disclosure not only waives the privilege as to the specific information revealed, but also waives the privilege as to the sub-ject matter of the disclosure. See Sheet Metal Workers Int'l Assoc., 29 F.3d at 125; Oloyede, 982 F.2d at 141; In re Martin Marietta Corp., 856 F.2d at 623; In re Grand Jury Proceedings, 727 F.2d at 1357; Jones, 696 F.2d at 1072. Therefore, under our precedents, Stables waived the privi-lege as to the subject matter of the phone tap. Because the privilege had been impliedly waived by Stables, Hawkins was entitled to question Diehl regarding the alleged wiretap. See, e.g. , In re Martin Marietta, 856 F.2d at 623.

Subject matter waiver is limited to "other communications relating to the same subject matter." Jones, 696 F.2d at 1072. In this case, the sub-ject matter revealed related to the wiretap. Thus, on remand Diehl's testi-mony should be limited to the wiretapping issue. Stables's subject matter waiver does not open up the possibility of a fishing expedition of all con-fidential communications that she had with Diehl during the course of the divorce representation.

9

alleged phone tap, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>

10