Filed: September 2, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 97-2488(L)
(CA-97-294-A)

Zeus Enterprises, Incorporated,

                                        Plaintiff - Appellee,

        versus

Alphin Aircraft, Incorporated,

                                        Defendant - Appellant.

O R D E R

        The court amends its opinion filed August 17, 1999, as follows:

        On page 8, footnote *, line 1 -- the name "Alphin" is corrected to read "Zeus."

                                For the Court - By Direction


                                /s/ Patricia S. Connor
                                        Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ZEUS ENTERPRISES, INCORPORATED,
Plaintiff-Appellee,

v.

ALPHIN AIRCRAFT, INCORPORATED,

Defendant-Appellant,

No. 97-2488

and

THURMAN S. ALPHIN,
Defendant.

ZEUS ENTERPRISES, INCORPORATED,
Plaintiff-Appellant,

v.

ALPHIN AIRCRAFT, INCORPORATED,

Defendant-Appellee,

No. 97-2493

and

THURMAN S. ALPHIN,
Defendant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-294-A)

Argued: April 6, 1999

Decided: August 17, 1999

Before ERVIN, MICHAEL, and KING,
Circuit Judges.

Affirmed by published opinion. Judge Michael wrote the opinion, in which Judge Ervin and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Robert Matthew Beckman, BODE & BECKMAN, L.L.P., Washington, D.C., for Appellant. Robert Eric Greenberg, FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ, P.L.L.C., Washington, D.C., for Appellee. **ON BRIEF:** Sheri M. Lyons, BODE & BECKMAN, L.L.P., Washington, D.C., for Appellant. Glenn W.D. Golding, FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ, P.L.L.C., Washington, D.C., for Appellee.

_____

**OPINION**

MICHAEL, Circuit Judge:

Zeus Enterprises, Inc. (Zeus) sued Alphin Aircraft, Inc. (Alphin) for breach of a contract that required Alphin to restore an airplane owned by Zeus to an airworthy condition. At trial Zeus introduced the decision of an administrative law judge of the National Transportation Safety Board (NTSB). This decision found that the repaired airplane was not airworthy. Zeus also introduced an order of the NTSB dismissing Alphin's attempt to appeal the ALJ's decision. The jury found that Alphin breached its contract to repair the plane and awarded damages of $125,000 to Zeus. Alphin appeals, contending that the ALJ's decision and the NTSB order were inadmissible hearsay. Zeus cross-appeals, contending that the district court improperly struck its damages request for the attorneys' fees Zeus paid to the law firm that represented it in the NTSB proceeding. We affirm the judgment.

I.

Zeus owned a Beechcraft Baron E-55 airplane that was heavily damaged in a crash landing. Under a repair agreement dated

2

August 9, 1993, Zeus engaged Alphin to restore the plane "to a fully airworthy condition." Alphin completed the repair work and returned the airplane to Zeus in May 1994. In February 1995 the Federal Aviation Administration (FAA) issued an Emergency Order of Suspension of the airplane's certificate of airworthiness, grounding the plane. Zeus appealed this emergency suspension order to the NTSB. At the NTSB the case was assigned to an ALJ, who conducted an evidentiary hearing that lasted twelve days. The hearing involved a detailed examination of information regarding the airworthiness of the plane, including the results of scientific tests. Alphin was permitted to intervene in this proceeding for the purpose of explaining and defending the technical aspects of its repair work. During the course of the hearing, Alphin introduced evidence and cross-examined witnesses. After the hearing the ALJ issued his Initial Decision affirming the FAA's emergency suspension order. He made detailed factual findings about the condition of the airplane and determined that it was not airworthy. Alphin appealed the ALJ's decision to the NTSB, which dismissed the appeal for lack of standing because Alphin was not a party to the proceeding.

Thereafter, Zeus sued Alphin for breach of contract for failure to restore the airplane to an airworthy condition. During trial the district court admitted the ALJ's Initial Decision and the NTSB's order dismissing Alphin's appeal, after denying Alphin's motion in limine. At the end of the trial, the court instructed the jury that the ALJ's decision was not conclusive but was to be considered "along with all the other evidence." The jury found in favor of Zeus and awarded damages of $125,000. Alphin appeals from the judgment, raising one issue: whether the district court committed reversible error when it refused to exclude the ALJ's decision and the NTSB's order as inadmissible hearsay.

Zeus is also dissatisfied with one ruling by the district court. The court struck the portion of Zeus's damages request that sought recovery for the attorneys' fees it paid to a law firm for representing it in the NTSB proceeding. The court concluded that Zeus prevented Alphin from inquiring into the reasonableness of those fees by asserting the attorney-client privilege, without offering any justification for doing so. Zeus cross-appeals on this point.

II.

The district court admitted the ALJ's Initial Decision and the NTSB's Order Dismissing Appeal under the public records exception to the hearsay rule. This exception, found in Federal Rules of Evidence 803(8), applies to:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth .. . (C) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8).

Rule 803(8) is grounded on the assumption "that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Fed. R. Evid. 803(8) advisory committee's note, quoted with approval in Ellis v. International Playtex, Inc., 745 F.2d 292, 300 (4th Cir. 1984). The admissibility of a public record specified in the rule is assumed as a matter of course, see id., unless there are sufficient negative factors to indicate a lack of trustworthiness, in which case it should not be admitted, id. The party opposing admission has the burden to establish unreliability. Id. at 301. Rule 803(8) "is not a rule of exclusion, but rather is a rule of admissibility" as long as the public record meets the requirements of the rule. Fred Warren Bennett, Federal Rule of Evidence 803(8): The Use of Public Records in Civil and Criminal Cases, 21 Am. J. Trial Advoc. 229, 232 (1997). See also Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169 (1988) (taking "[a] broad approach to admissibility under Rule 803(8)(C)").

We turn first to Alphin's argument that the ALJ's decision is inadmissible. Alphin argues that the decision is not the result of "factual findings resulting from an investigation," as required by Rule 803(8)(C). Rather, Alphin says, the decision is the result of "an appellate quasi-judicial proceeding," in which the ALJ's "role was that of a judge." Appellant's Br. at 12. Understanding the ALJ's role is basic, but once his role is understood, it becomes apparent that the admis-

4

sion of his decision is consistent with Rule 803(8)(C) and the case law.

To examine the ALJ's function, we start with the root of this controversy, the FAA's Emergency Order of Suspension, which suspended the airworthiness certificate on Zeus's airplane. Zeus appealed the order of suspension to the NTSB. See 49 U.S.C. § 44709(d) ("A person adversely affected by an order of the [FAA] under this section may appeal the order to the National Transportation Safety Board.") Zeus's appeal to the NTSB started a new proceeding, in which the FAA's suspension order simply served as the complaint. See 49 C.F.R. § 821.31 (1998). An ALJ was assigned to preside over this new proceeding. See 49 C.F.R. § 821.35(a) (1998). At the ensuing hearing each party had the opportunity to present its evidence and to cross-examine witnesses. See 49 C.F.R. § 821.38 (1998). Although Alphin was not a party, the ALJ allowed it to intervene, with its participation confined to issues concerning the technical aspects of its repair work on the airplane. During the twelve days of hearings the ALJ conducted an extensive factual inquiry into the airworthiness of Zeus's airplane. The ALJ heard and considered testimony from FAA inspectors, the president of Alphin, one of the owners of Zeus, and several scientific and engineering experts. The ALJ also examined the airplane's maintenance records and reviewed the results of metallurgical and engineering tests on the plane. After the hearing the ALJ issued his decision that included detailed factual findings and determined that the airplane was not airworthy. The ALJ based his findings on "a preponderance of reliable, probative, and substantial evidence." 49 C.F.R. § 821.49(a)(1) (1998).

With this background, we return to Alphin's argument that the ALJ acted as a judge and presided over a quasi-judicial proceeding. As a result, according to Alphin, the ALJ's factual findings are not the result of an "investigation" as Rule 803(8)(C) requires. Alphin relies on Nipper v. Snipes, 7 F.3d 415, 417 (4th Cir. 1993), where we held that factual findings of a court are not admissible under Rule 803(8)(C)'s hearsay exception. In Nipper we emphasized that a court's findings "present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." Id. at 418 (quoting Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505

5

F. Supp. 1125, 1186 (E.D. Pa. 1980)). We explained that at common law a judgment from another case was inadmissible, id. at 417 (citing 5 John H. Wigmore, Wigmore on Evidence § 1671a (James H. Chadbourn rev. 1974)), and that when the Federal Rules of Evidence allow for the admission of court judgments, they do so explicitly, id. (citing Fed. R. Evid. 803(22) (judgment of previous conviction), 803(23) (judgment as to personal, family, or general history, or boundaries)). We thus concluded that there was no authority for the admission of the factual findings of a court.

We did say in Nipper that "[a] judge in a civil trial is not an investigator, rather a judge." Id. We were careful, however, to distinguish between the findings made by a judge in the judicial branch from those made by "agencies and offices of the executive branch." Id. As Nipper recognizes, see id., this distinction between judicial and agency findings is supported by the advisory committee note to Rule 803(8). The advisory note focuses on the admissibility of findings of officials and agencies within the executive branch, but makes no mention whatsoever of findings by a court. See Fed. R. Evid. 803(8) advisory committee's note; see also Nipper, 7 F.3d at 417; Zenith Radio Corp., 505 F. Supp. at 1185. Because Nipper is limited to excluding the findings of judges in the judicial branch, it does not require us to exclude the decision of an ALJ who is an officer in the executive branch.

Two circuits have held that an executive department ALJ's decision that encompasses findings of fact (made after an evidentiary hearing) is admissible under Rule 803(8)(C). See Henry v. Daytop Village, Inc., 42 F.3d 89, 96 (2d Cir. 1994) (findings of state department of labor ALJ in unemployment benefits hearing); In re Paducah Towing Co., 692 F.2d 412, 421 (6th Cir. 1982) (findings of ALJ in Coast Guard proceeding to revoke license of ship's captain). In addition, the Supreme Court has said that the "[p]rior administrative findings," made by a Veteran's Administration complaints examiner in a hearing on an employment discrimination claim, "may . . . be admitted as evidence at a federal-sector trial de novo." Chandler v. Roudebush, 425 U.S. 840, 863 n.39 (1976) (citing Fed. R. Evid. 803(8)(C)). See also Lloyd v. American Export Lines, Inc., 580 F.2d 1179, 1182-83 (3d Cir. 1978) (findings of hearing examiner in Coast Guard proceeding to determine whether merchant mariner's docu-

6

ment should be suspended or revoked were admissible under Rule 803(8)(C)). The determination of these courts that the findings of an agency's ALJ or hearing examiner are admissible under Rule 803(8)(C) necessarily means that the underlying hearing qualified as an "investigation" under the rule. Otherwise, the findings could not have been admitted. The ALJ here acted in a manner similar to the ALJs and hearing examiners in Henry v. Daytop Village, Inc., In re Paducah Towing, Chandler v. Roudebush, and Lloyd v. American Export Lines, Inc. Because the proceedings in those cases were necessarily (although implicitly) considered to be investigations, we believe the proceeding before the ALJ here also qualifies as an investigation under Rule 803(8)(C). In all events, the ALJ's systematic and detailed inquiry into the airworthiness of Zeus's airplane was more than sufficient to satisfy the "investigation" requirement of the rule.

Alphin also argues that because the proceeding before the ALJ was an appeal from the FAA order, the ALJ was presiding over an appeal, not an investigation. As our prior discussion of the ALJ's role indicates, he performed the routine functions of an ALJ: he heard evidence and made his findings based on a preponderance of reliable, probative, and substantial evidence. See Zeus Enterprises, Inc., No. SE-13974, at 20 (N.T.S.B. Nov. 27, 1996). Even though Zeus's notice of appeal from the FAA order triggered the proceeding before the ALJ, the ALJ conducted that proceeding as an "investigation" as that term is understood under Rule 803(8)(C). Because the ALJ's factual findings resulted from this investigation, his decision was admissible under the rule.

Alphin next argues that even if the ALJ's decision was admissible under Rule 803(8)(C), it should have been excluded under Rule 403 because "its probative value [was] substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Alphin claims the following prejudice: "Because the ALJ is a `judge,' the jury undoubtedly regarded his opinion as dispositive on the airworthiness issue." Appellant's Br. at 14. The probative value of the ALJ's decision is real and beyond dispute. His findings were based on an analysis of twelve days of evidence on whether the plane was airworthy, the issue central to the breach of contract claim in this case. We do not believe the admission of the decision caused unfair prejudice that outweighed its probative value. At trial Alphin introduced evidence to contradict

7

the ALJ's findings, directed the jury to this evidence in closing, and argued forcefully to the jury that the ALJ's decision should be given "little weight." Finally, the district court instructed the jury that the ALJ's decision "is not conclusive on the issue you have before you. But it should be considered along with all the other evidence in the case." In these circumstances, even though the ALJ had the word "judge" in his title, we are satisfied that it did not lead the jury to conclude that his decision was dispositive of the issue before it.

We turn finally to the admissibility of the NTSB Order Dismissing Appeal. We conclude that the district court's decision to admit that order into evidence under Rule 803(8)(C) was erroneous. The NTSB order merely held that Alphin lacked standing to appeal the ALJ's decision. The NTSB order involved no factual determinations and was strictly a legal ruling. As such, the NTSB order was not admissible under Rule 803(8)(C).* However, the district court's decision to admit the order was harmless error because that document did not bear on a material issue or alter the ALJ's decision, which we conclude was properly admitted. See Kotteakos v. United States, 328 U.S. 750, 765 (1946) (holding that error is harmless if we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error").

III.

Zeus argues on cross-appeal that the district court erred when it struck Zeus's request to recover (as part of its damages) the attorneys' fees it paid to Shaw, Pittman, Potts & Trowbridge (Shaw Pittman), the firm that represented it in the NTSB proceeding. Zeus claimed that it incurred these fees because Alphin failed, in breach of the contract, to restore the airplane to a condition of airworthiness. Zeus sought to prove this item of damages by reading to the jury the evi-

_____

* Zeus does not argue that the NTSB order was admissible under the other provisions of Rule 803(8), and it is plain that they do not apply. These provisions govern public records setting forth "the activities of the office or agency," Fed. R. Evid. 803(8)(A), and "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," Fed. R. Evid. 803(8)(B).

8

dentiary deposition of a Shaw Pittman lawyer who worked on the NTSB case. The deposition transcript reveals that when Alphin's lawyer asked the Shaw Pittman lawyer questions on cross-examination about what factual investigation and legal research her firm did for Zeus, Zeus asserted the attorney-client privilege and refused to allow any answers on those topics. The district court, after concluding that Zeus had prevented any inquiry into whether Shaw Pittman's bills were reasonable, excluded the fee expenditure from any recoverable damages.

We do not understand why Zeus could not have allowed its law firm to disclose some information about the nature and extent of its work, without entrenching upon the attorney-client privilege. In any event, the burden of establishing the applicability of the attorney-client privilege rests on the proponent of the privilege. Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). The privilege does not protect all aspects of the attorney-client relationship; it only protects confidential communications between lawyer and client. Id. at 383-84. The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the specific communications at issue are privileged and that the privilege was not waived. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). Here, Zeus made a blanket assertion of privilege to Alphin's questions to Shaw Pittman about the scope of that firm's work for Zeus in connection with the NTSB proceeding. Zeus offered nothing to satisfy its burden to establish that the information sought by Alphin was protected by the attorney-client privilege. Accordingly, the district court did not err in striking Zeus's request to recover attorneys' fees paid to Shaw Pittman for its work in the administrative proceeding.

IV.

In summary, the Initial Decision of the ALJ was properly admitted into evidence, the admission of the NTSB Order Dismissing Appeal was harmless error, and Zeus's request to recover attorneys' fees paid to Shaw Pittman for the NTSB proceeding was properly stricken. Accordingly, the judgment of the district court is

AFFIRMED.

9