**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: Grand Jury Subpoena

UNITED STATES OF AMERICA,
Respondent-Appellee,

v.

UNDER SEAL,
Petitioner-Appellant.

No. 99-2229

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-99-2417-AW)

Argued: November 30, 1999

Decided: February 25, 2000

Before WIDENER and WILLIAMS, Circuit Judges, and
Samuel G. WILSON, Chief United States District Judge
for the Western District of Virginia,
sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilson wrote the opinion
in which Judge Widener and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Joshua R. Treem, SCHULMAN, TREEM, KAMIN-
KOW, GILDEN & RAVENELL, L.L.C., Baltimore, Maryland, for

Appellant. Sandra Wilkinson, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Rod J. Rosenstein, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

_____

**OPINION**

WILSON, Chief District Judge:

The United States served a grand jury subpoena on an attorney commanding him to testify and produce documents concerning the identity of a client. The client intervened and moved to quash on the ground that compliance would invade the attorney-client privilege. The district court denied the motion, and this appeal followed. We conclude that the compelled disclosure of the client's identity would not violate the privilege. Accordingly, we affirm.

I.

A federal grand jury in the District of Maryland is investigating allegations that 37 Forrester Street, S.W., Washington, D.C. ("the property"), is an open air drug market under the control and authority of Erskine "Pee Wee" Hartwell and his alleged confederates. The same grand jury has returned indictments against Hartwell and numerous alleged co-conspirators for money laundering and conspiracy to distribute heroin, cocaine, and marijuana in the District of Maryland and has named the Forrester Street property in a forfeiture count as drug trafficking proceeds. The grand jury continues to investigate the ownership of the property as it relates to other aspects of the drug trafficking operation.

The property is titled in the name "Daniel C. Quispehuman," whom the government believes to be a straw owner. According to Washington, D.C., land records, the property was titled in that name on June 23, 1991. For a number of years, residents living near the property complained that drug dealers were operating in and around the building. In 1998, the D.C. Council enacted laws that permit community groups to file civil nuisance lawsuits against owners of properties

2

used for drug dealing. A non-profit community organization, known as Bellview Improvement Council, Inc. ("BIC"), retained a law firm to help stop the drug activity at the property, and, on September 11, 1998, Mark S. Davies, counsel for BIC, sent a letter to "Daniel Quispehuman" demanding that he stop the drug dealing at the property. After receiving no response, Davies sent a second letter addressed to Quispehuman on April 9, 1999, indicating that he would file suit on April 29, 1999, absent a response to his letter.

On April 28, 1999, Mark Rochon wrote a letter to Davies, stating:

> I will be undertaking the clarification of ownership of 37 Forrester Street, S.W., Washington, D.C. 20032. My client hopes to re-title the property in his name and make efforts to deal with the problems described in your letters to Mr. Daniel C. Quispehuman, dated September 11, 1998 and April 19, 1999.

> I will need about two weeks to put these efforts into place. Please forego any other actions until that time, as I am sure that needless and fruitless litigation is not your goal.

> I look forward to working with you to remedy the problems at 37 Forrester Street. I will be able to be more forthcoming in the near future, once title is clear.

On May 3, 1999, Davies replied to Rochon, agreeing to postpone filing suit for two weeks. On May 17, 1999, Davies wrote Rochon to summarize a phone conversation of that day, stating that Rochon had informed him that the property was "now `boarded up'" and "its `tenants have been evicted.'" Davies further noted that Rochon "declined to disclose the name of [his] client, but stated that [he did] not represent Mr. Quispehuman, the recorded owner of 37 Forrester Street."

On July 12, 1999, the government served a grand jury subpoena on Rochon seeking Rochon's testimony, as well as any: (1) written retainer agreements with the unidentified client referenced in Rochon's April 28 letter; (2) nonprivileged documents reflecting any efforts to re-title 37 Forrester Street in the name of the client refer-

3

enced in the April 28 letter; (3) correspondence with Daniel C. Quispehuman; and (4) nonprivileged documents relating to the ownership of 37 Forrester Street. Following issuance of the subpoena, an Assistant United States Attorney involved in the investigation informed Rochon that she would question him before the grand jury concerning the identity of his client.

Rochon moved to quash the subpoena, contending that requiring him to disclose the identity of his client would reveal the client's purposes and motives for retaining him and, therefore, would result in the disclosure of confidential attorney-client communications. In support of his motion, Rochon submitted a declaration stating that the client retained him in connection with certain issues relating to the property, that the client requested that his identity not be disclosed without his consent, and that Rochon had not disclosed his client's identity to any third party.

Adopting Rochon's arguments, the client moved to intervene and quash the grand jury subpoena. The district court granted the motion to intervene but, on September 1, 1999, denied Rochon and his client's motions to quash. The client filed a timely notice of appeal, and the district court stayed enforcement of the subpoena pending the appeal.

II.

The client argues that his identity, something normally not protected by the attorney-client privilege, is protected because its disclosure would reveal a confidential communication -- his motive or purpose for seeking legal advice. Despite his authorization of Rochon's letter to Davies, the client claims that he never intended for Rochon to reveal his identity. It follows, he argues, that since Rochon's letter reveals his motives or purposes in seeking legal advice, matters that are ordinarily privileged, the court must extend that privilege to his identity, which is not ordinarily privileged. We conclude that the client cannot create a privilege that protects his identity by voluntarily disclosing a confidential communication. If we extended the privilege to the client's identity in this case, we would be allowing him to do just that. Therefore, the client's identity is not protected.

4

"The attorney-client privilege is the oldest of the privileges for con-
fidential communications known to the common law." <u>Upjohn v.
United States</u>, 449 U.S. 383, 389 (1981). "[W]hen the privilege
applies, it affords confidential communications between lawyer and
client complete protection from disclosure." <u>Hawkins v. Stables</u>, 148
F.3d 379, 383 (4th Cir. 1998). However, since it impedes the full and
free discovery of the truth, the attorney-client privilege "is to be nar-
rowly construed" and "recognized `only to the very limited extent that
. . . excluding relevant evidence has a public good transcending the
normally predominant principle of utilizing all rational means for
ascertaining truth.'" <u>Id</u>. (quoting <u>Trammel v. United States</u>, 445 U.S.
40, 50 (1980)). As such, it applies only to "[c]onfidential disclosures
by a client to an attorney made in order to obtain legal assistance,"
<u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976), and "`[t]he burden
is on the proponent of the attorney-client privilege to demonstrate its
applicability.'" <u>Hawkins</u>, 148 F.3d at 383 (quoting <u>United States v.
Jones</u>, 696 F.2d 1069, 1072 (4th Cir. 1982)). **1**

"`[T]he identity of the client, the amount of the fee, the identifica-
tion of payment by case file name, and the general purpose of the
work performed are usually not protected from disclosure by the
attorney-client privilege,'" <u>Chaudhry v. Gallerizzo</u>, 174 F.3d 394, 402
(4th Cir. 1999) (quoting <u>Clarke v. American Commerce Nat'l Bank</u>,
974 F.2d 127, 129 (9th Cir. 1992)), because "such information ordi-
narily reveals no confidential professional communications between

_____

**1** This Circuit has adopted the classic test for determining the existence
of the attorney-client privilege:

> "The privilege applies only if (1) the asserted holder of the privi-
> lege is or sought to become a client; (2) the person to whom the
> communication was made (a) is a member of the bar of a court,
> or his subordinate and (b) in connection with this communication
> is acting as a lawyer; (3) the communication relates to a fact of
> which the attorney is informed (a) by his client (b) without the
> presence of strangers (c) for the purpose of securing primarily
> either (i) an opinion on law or (ii) legal services or (iii) assis-
> tance in some legal proceeding, and not (d) for the purpose of
> committing a crime or tort; and (4) the privilege has been (a)
> claimed and (b) not waived by the client."

<u>Hawkins</u>, 148 F.3d at 383 (quoting <u>Jones</u>, 696 F.2d at 1072).

attorney and client . . . ." In re Grand Jury Matter, 926 F.2d 348, 352 (4th Cir. 1991) (quoting In re Osterhoudt, 722 F.2d 591, 593 (9th Cir. 1983)). "Absent special circumstances, disclosure of the identity of the client and fee information stand on a footing different from communications intended by the client to explain a problem to a lawyer in order to obtain legal advice." In re Shargel, 742 F.2d 61, 63 (2nd Cir. 1984).

In NLRB v. Harvey, 349 F.2d 900 (4th Cir. 1965), we recognized that, under special circumstances, the attorney-client privilege may extend to the client's identity. In Harvey, an attorney, apparently in furtherance of his representation of a client, hired a detective. See 349 F.2d at 901-02. The district court ordered the detective to name the attorney who hired him. See id. at 901. Once named, however, the attorney refused to identify his client, and the district court quashed the subpoena requiring identification. See id . at 901-02. On appeal, we recognized an exception to the general rule that a client's identity is not privileged:

> To the general rule is an exception, firmly bedded as the rule itself. The privilege may be recognized when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication.

Id. at 905. It appeared that the client's identity was sufficiently intertwined with the client's confidences such that compelled disclosure of the former essentially disclosed the latter. See id. at 905. If so, we concluded that the district court should not compel the attorney to reveal the identity of his client. See id. at 907. Accordingly, we remanded for the district court to determine whether the act of hiring the investigator was sufficiently connected to the rendering of legal services as to cloak it with the privilege. See id.**2**

Since deciding Harvey, we have consistently held that a client's identity is privileged only if disclosure would in essence reveal a confidential communication. See, e.g., Chaudhry, 174 F.3d at 403; In re

_____

**2** On remand, the district court found the client's identity to be privileged. See NLRB v. Harvey, 264 F. Supp. 770, 772 (W.D. Va. 1966).

Grand Jury Matter, 926 F.2d at 352; United States v. Ricks, 776 F.2d 455, 465 (4th Cir. 1985). Although other circuits have, at times, indicated a willingness to protect a client's identity or fee information because disclosure would either implicate the client in the very criminal activity for which legal advice was sought, see, e.g., United States v. Strahl, 590 F.2d 10, 12 (1st Cir. 1978), cert. denied, 440 U.S. 918 (1979), or supply the `last link' in an existing chain of incriminating evidence likely to lead to the client's indictment, see, e.g., In re Grand Jury Proceedings (Pavlick), 680 F.2d 1026, 1027 (5th Cir. 1982), we have rejected those exceptions. See In re Grand Jury Matter, 926 F.2d at 352. Instead, we have insisted that the client demonstrate that disclosure would reveal a confidential, privileged communication. Here, the client asserts that disclosure would reveal the following confidential motives or purposes: (1) that he "was concerned with the allegations raised by Mr. Davies' letters"; (2) that he "sought Mr. Rochon's legal advice and assistance in avoiding the possibility of impending litigation concerning 37 Forrester Street"; and (3) that he "wanted Mr. Rochon to potentially help him re-title the property in his name and remedy the drug trafficking and other problems occurring on the property." All of these, however, are motives or purposes that the client voluntarily disclosed and, as such, are no longer confidential.

The attorney-client privilege protects only confidential communications. See Zeus Enter. Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 244 (4th Cir. 1999); In re Grand Jury Matter, 926 F.2d at 352. In In re Grand Jury Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984), we held that client communications with a lawyer relating to the preparation of a prospectus to be used in the enlistment of investors were not confidential even though the prospectus was never published because it "was to be published to others and was not intended to be kept in confidence." As we explained later in United States v. Under Seal, 748 F.2d 871, 875 (4th Cir. 1984), "[t]he clients had decided to publish a prospectus before approaching their attorney-- thus, the attorney had been employed to convey information to third parties rather than to provide legal advice for the clients' own guidance." Those circumstances contrasted with the circumstances of United States v. Under Seal, in which we found that client communications instructing an attorney to "research the possibility of filing public papers" remained privileged because the client had not yet demonstrated the

7

requisite intent to publish. 748 F.2d at 875 (emphasis added). And the latter circumstances contrast markedly with those of the case before us, in which the client authorized the public disclosure of a letter he now claims reveals confidential motives and purposes.

The long-standing general rule does not afford protection to the client's identity, and that rule is not subject to the client's manipulation. A confidential communication ceases to be confidential when the client authorizes its disclosure.**3** The client cannot bootstrap a privilege to protect his identity. He cannot protect his identity from disclosure by anonymously disclosing communications, information, purposes or motives that, otherwise, would remain protected. Yet, under the client's reasoning, his disclosures strengthen his claim of privilege. As he views it, the more revealing his disclosures, the stronger his argument that his identity must remain confidential. As we view it, if he wants a communication to remain confidential he should not reveal it. He must choose between confidentiality and disclosure. He cannot have both. Simply put, we do not recognize an exception that protects the client's identity because the client has authorized the disclosure of information that he could have kept confidential. Rather, we recognize, as we did in Harvey, a narrow exception that protects a client's identity when the client has not authorized the disclosure of confidential information or of a confidential communication, and the compelled disclosure of his identity is tantamount to revealing his confidences.

_____

**3** There is a convergence of waiver and the underpinning of our decision. The disclosure of privileged information waives the privilege. See Hawkins, 148 F.3d at 384 n.4 ("As a general rule, implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege."); Zeus Enter. Inc., 190 F.3d at 244 ("The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the specific communications at issue are privileged and that the privilege was not waived."). However, no broad-based waiver is apparent that would permit the grand jury to question Rochon concerning his client's motives and purposes, and we do not intimate that our decision reaches beyond the client's identity and the documents identified in the challenged subpoena.

8

In Harvey, neither the client nor his attorney made public the client's confidential interests. Instead, a third party, the detective, disclosed them. In this case, however, the client's attorney made an authorized disclosure of his client's interests in the April 28 letter to Davies. Insofar as that letter reveals certain motives or purposes, those motives or purposes ceased to be confidential when Rochon sent the letter. See United States v. Under Seal , 748 F.2d at 875 ("[I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege." (quotations and citations omitted)).**4** When a client hires an attorney to take public actions on the client's behalf -- in this case, sending the letter to Davies in order to avoid a lawsuit -- the privilege does not extend to the client's identity once that public action is taken.**5**

_____

**4** The client claims that, since he never purchased the property, he took no public action. He confuses formal legal action with public action. Although it is true enough that he took no formal legal action to retitle the property, he sent a letter to adverse parties disclosing the motives or purposes he now claims are confidential. Since he disclosed them to someone outside the attorney-client relationship they are no longer privileged. See Hawkins, 148 F.3d at 384 n.4. He did even more, however, than simply disclose them to persons outside the attorney-client relationship, he disclosed them to adversaries who were threatening public action.

**5** The client cites Baird v. Koerner, 279 F.2d 623 (9th Cir. 1960), as support for the proposition that an attorney can take public action on behalf of an anonymous client and then protect the client's identity under the attorney-client privilege. In Baird, individuals retained an attorney to determine whether their tax returns were proper and to take any steps to limit their legal exposure. See 279 F.2d at 626. Upon concluding that his clients owed back taxes, the attorney forwarded the amount due anonymously to the IRS on his clients' behalf. See id . The IRS subsequently subpoenaed the attorney, seeking disclosure of the identities of his unnamed clients. See id. at 627. The Ninth Circuit found that the identities of the attorney's clients were protected by the attorney-client privilege because "the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney was employed." Id. at 633. See also Tillotson v. Boughner, 350 F.2d 663 (7th Cir. 1965) (similar facts, same result).

9

The attorney-client privilege is not intended to permit "an attorney to conduct his client's business affairs in secret." In re Grand Jury Subpoenas (Hirsch), 803 F.2d 493, 496 (9th Cir. 1986). As the Second Circuit, in refusing to extend the privilege beyond the protection of confidential legal communications, stated:

> It seems evident to us that a broad privilege against the disclosure of the identity of clients and of fee information might easily become an immunity for corrupt or criminal acts. [citation omitted]. Such a shield would create unnecessary but considerable temptations to use lawyers as conduits of information or of commodities necessary to criminal schemes or as launderers of money. The bar and the system of justice will suffer little if all involved are aware that assured safety from disclosure does not exist.

In re Shargel, 742 F.2d at 64. "A client may not `buy' a privilege by retaining an attorney to do something that a non-lawyer could do just as well." 2 Saltzburg et al., Federal Rules of Evidence Manual 698 (7th Ed. 1998).

In an affidavit in the district court, Rochon asserted that he was retained by the client "with the understanding that [the client's] identity would not be disclosed to any third party during the course of [Rochon's] legal representation." The mere belief of either the client

_____

Although in Harvey we cited Baird for the general proposition that a client's identity may be privileged, see 349 F.2d at 905, we reject the notion that a client can protect his identity by hiring an attorney to make a disclosure for him. An individual cannot purchase anonymity by hiring a lawyer to deliver his money or his messages. See Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5478 (1986) ("Inasmuch as there are any great many business firms providing messenger service, we may deduce that the client is willing to pay the higher cost of employing a lawyer to make his deliveries because he understands what the courts do not: namely, that he is not hiring a messenger but renting the privilege. Once the issue is put this way, it is difficult to see how granting the privilege to the lawyer-messenger can be justified.").

or Rochon, however, that the attorney-client privilege would allow Rochon to secretly carry out legal or other business on the client's behalf is not enough to create a privilege as to the client's identity. In the words of the Eighth Circuit, "we know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one." In Re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997), cert. denied, 521 U.S. 1105, 117 S.Ct. 2482 (1997).

In summary, the client does not provide evidence of an unauthorized disclosure of a confidential communication which, when coupled with his identity, breaches the attorney-client privilege. Rather, the client claims that an authorized letter discloses his motives or purposes in seeking legal advice. If so, the disclosure is his own, and the information is no longer confidential and is not protected. Therefore, the District Court properly denied the motions to quash.

III.

For the reasons stated, the judgment of the district court is affirmed.

AFFIRMED

11