**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 13 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ARCHIE MONROE GLASS, II,

      Defendant-Appellant.

-----------------------------------------------------

GEORGE C. HARRIS,

      Amicus Curiae.

No. 97-6066

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 96-CR-94)**

---

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Randal A. Sengel, Assistant U.S. Attorney (Patrick M. Ryan, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

George C. Harris, Associate Professor, University of Utah College of Law, Salt Lake City, Utah, for Amicus Curiae.

---

Before **PORFILIO**, **TACHA,** and **KELLY**, Circuit Judges.

**PORFILIO**, Circuit Judge.

In ***Jaffee v. Redmond***, ___ U.S. ___, 116 S.Ct. 1923, 1931 (1996), the Supreme Court held "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." While announcing the privilege in the context of that § 1983 action, the Court found it "neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'" ***Id.*** at 1932 (quoting ***Upjohn Co. v. United States***, 449 U.S. 383, 386 (1981)). This case represents one of those anticipated permutations: whether ***Jaffee*** extends to a criminal case in which the confidential communication between a psychotherapist and his patient constituted the sole basis for the government's prosecution and conviction for threatening the life of the President. Confined to the particular facts and circumstances of this case, we hold the rule and rationale of ***Jaffee*** apply and reverse the district court's denial of the motion to exclude the statement which formed the basis for defendant's conditional guilty plea.

## I. The Threat

The record is sparse and uncontroverted. On February 16, 1996, Archie Monroe Glass was taken to Hillcrest Hospital where he was voluntarily admitted to the mental

health unit for treatment of his "ongoing mental illness." To Dr. Shantharam Darbe, a psychotherapist examining him, Mr. Glass stated "he wanted to get in the history books like Hinkley [sic] and wanted to shoot Bill Clinton and Hilary [sic]." Several days later, Dr. Darbe released Mr. Glass who had agreed "to participate in outpatient mental health treatment while residing at his father's home." Ten days after his admission and release from the hospital, an outpatient nurse, discovering Mr. Glass had left his father's home, notified local law enforcement. Subsequently, Secret Service agents contacted Dr. Darbe who related Mr. Glass' statement.

Indicted for knowingly and willfully threatening to kill the President of the United States in violation of 18 U.S.C. § 871(a),[1] Mr. Glass moved to exclude Dr. Darbe's statement on the ground the confidential communication to his treating psychotherapist was protected by the psychotherapist-patient privilege announced in *Jaffee*. Responding to the motion, the government argued to the district court, albeit without benefit of an evidentiary hearing, "[o]nce Dr. Darbe determined that Defendant Glass presented a danger of violence to the President of the United States, he had a duty to protect the

---

[1]18 U.S.C. § 871(a) states, in part:

> Whoever knowingly and willfully deposits for conveyance in the mail or for delivery ... any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States ... or knowingly and willfully otherwise makes any such threat against the President ... shall be fined under this title or imprisoned not more than five years, or both.

President,"[2] relying on footnote 19 of *Jaffee,* in which the Court expanded on its reluctance to propound the "full contours" of the psychotherapist-patient privilege but, in dicta, proffered an exception:

> Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.

116 S.Ct. at 1932 n.19. The district court agreed, persuaded under such compelling circumstances as those presented here of "an express threat to kill a third party by a person with an established history of mental disorder," that the "broad privilege recognized by *Jaffee* is inapplicable." This conclusion was made without presentation of evidence and, from our review of the record, appears to be supported factually only by argument contained in the government's trial court brief.

Mr. Glass now proposes a triad of alternative resolutions to the district court's adverse ruling: (1) extend the psychotherapist-patient privilege to criminal cases; (2) hold, in this case, assertions made solely for the purpose of treatment, with an expectation of confidentiality, do not constitute "threats" under § 871; or (3) remand the case for an evidentiary hearing to determine whether the facts fit the *Jaffee* exception for serious threats of harm to third persons. In opposition and upon the evidentiary bedrock that

---

[2]The basis for this statement is undisclosed. There is no testimony or affidavit from Dr. Darbe indicating he concluded Mr. Glass "presented a danger of violence to the President." From the record, it appears this is hypothesis only.

testimonial privileges thwarting the search for truth should be narrowly construed, the government warns adopting any of Mr. Glass' alternatives would create a "broad exclusionary rule" preventing "a psychotherapist from fulfilling his common law duty to protect the foreseeable victims from danger." The government urges *Jaffee*'s rationale for the privilege, fostering an atmosphere of confidence and trust when a person seeks to disclose his thoughts, simply does not apply in a criminal setting and asks we extend **United States v. Burtrum**, 17 F.3d 1299 (10th Cir.), *cert. denied,* 513 U.S. ___, 115 S.Ct. 176 (1994), to all criminal cases. This proposition, Mr. Glass parries, eviscerates *Jaffee,* requiring the admission of all threatening statements against third parties made to psychotherapists in the course of treatment. Because there was no evidentiary hearing or other fact-finding in this case to establish the patient knew what he was saying or to determine whether the threat of harm could only be averted by disclosure, Mr. Glass insists our embracing the government's suggestion conflicts with *Jaffee*'s express reluctance to define the parameters of the privilege, preferring analysis on a case-by-case basis.

## II. *Jaffee*

In *Jaffee*, Petitioner, the administrator of the estate of a man who was shot by a police officer, sought access to a therapist's notes taken during counseling sessions with the officer after the shooting. Because of the conflicting versions of the event, Petitioner sought to discover the clinical social worker's notes for use in cross-examining the officer

in a suit alleging violation of the deceased's constitutional rights under 42 U.S.C. § 1983 and Illinois' wrongful death statute. The officer responded the notes were protected by the psychotherapist-patient privilege and despite the court's rejecting the argument, the officer and therapist refused to comply with the court's disclosure order, prompting the court to instruct the jury it "could presume the contents of the notes would have been unfavorable to respondents." 116 S.Ct. at 1926. The jury then awarded the estate damages on the federal and state claims. The Seventh Circuit reversed and remanded for a new trial, concluding "'reason and experience,' the touchstones for acceptance of a privilege under Rule 501 of the Federal Rules of Evidence, compelled recognition of the psychotherapist-patient privilege." *Id.* (quoting 51 F.3d 1346, 1355 (7th Cir.1995)). Because of the split in the circuits in recognizing a psychotherapist privilege under Rule 501 of the Federal Rules of Evidence, the Court granted certiorari.

Against the broad mandate of the Federal Rules of Evidence authorizing federal courts "to define new privileges by interpreting 'common law principles ... in the light of reason and experience,'" *id.* at 1927 (citation omitted), yet recognizing "the general duty to give what testimony one is capable of giving," *id*., the Court acknowledged that testimonial privileges may, however, be justified by a "public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Id.* (internal quotes omitted) (citations omitted). "Reason and experience" persuaded the Court the psychotherapist-patient privilege advances both a public good and important

private interests. "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 1929. At the same time, fostering and protecting "an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears" further "important private interests." *Id.* The Court reasoned sacrificing these important public and private interests for only modest evidentiary benefit, given the communications would unlikely come into being were they not protected, "would therefore serve no greater truth seeking function than if it had been spoken and privileged." *Id.* Thus mirrored against "the uniform judgment of the States," *id.* at 1930, that fifty States and the District of Columbia had enacted some form of psychotherapist-patient privilege, the Court concluded the confidential communications between a psychotherapist and her patient are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.

Made clear by *Jaffee* is that the privilege is not rooted in any constitutional right of privacy but in a public good which overrides the quest for relevant evidence; the privilege is not subject to a "balancing component ... [m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance or the patient's interest in privacy and the evidentiary need for disclosure," *id.* at 1932; and it covers

confidential communications to licensed psychiatrists, psychologists, and clinical social workers whose "clients often include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist but whose counseling sessions serve the same public goals." *Id.* at 1931. Left expressly unresolved, however, were its exact contours and specific exceptions requiring we analyze the particular facts of this case under *Jaffee*'s broad directive.

### III. The Glass Case

Unlike *Jaffee*, the Glass case is a criminal prosecution in which the district court permitted the prosecution to use Mr. Glass' statement to his treating psychiatrist concluding it constituted the precise type of threat to a third party the Court distinguished in *Jaffee*'s footnote 19. However, like *Jaffee*, the statement arose in the course of Mr. Glass' treatment presumably in "an atmosphere of confidence and trust" in which Mr. Glass was "willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Id*. at 1928. When the statement was made, the treating psychiatrist did not contact authorities. We glean from the minimal details of this record the psychiatrist instead proposed a course of treatment for Mr. Glass presumably premised on Mr. Glass' "frank" disclosures. That is, viewed through the *Jaffee* lens, the record reflects Mr. Glass' confidential communication "facilitat[ed] the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Id.* at 1929.

However, the government urges in a criminal context, when this evidentiary privilege clashes with the duty to warn, *Jaffee*'s rationale elevating the salutary benefits of treatment does not apply. It maintains Mr. Glass never contested the characterization of the statement as a threat under the statute. Indeed, Mr. Glass has conceded it was a threat. Thus, the government urges the privilege must yield in this precise situation where "a serious threat of harm to the patient or to others can be averted *only* by means of a disclosure by the therapist." *Id.* at 1932 n.19.

*Jaffee*, however, indicated the contours of the privilege would be fleshed out on a case-by-case basis. *Id.* at 1932. In this case, the record discloses a statement made to a psychiatrist during a confidential session prompting the therapist to implement a course of treatment which included discharging Mr. Glass from hospital supervision. Taken by themselves, these circumstances are hardly an indication of a threat which can only be averted by means of disclosure. The record further discloses ten days elapsed before the Secret Service was contacted, triggering its interview of the psychotherapist. There is neither evidence of an affirmative effort by the psychotherapist to avert the threat of harm nor of how the Secret Service only averted the threat through its disclosure. That is, on the record before us, we have no basis upon which we can discern how ten days after communicating with his psychotherapist, Mr. Glass' statement was transformed into a serious threat of a harm which could only be averted by disclosure. Without further facts, we fail to see how this situation differs from that protected in *Jaffee.*

Contrary to the government's suggestion, we cannot fill that gap with our decision in **Burtrum.** 17 F.3d at 1299. In that case, defendant, charged with several counts of child abuse, sought to exclude testimony and records of the psychiatric treatment he received after the alleged incidents. However, the district court compelled defendant's psychotherapist to testify after applying a Second Circuit approach to weigh the public interest in protecting young children from sexual abuse against the evidentiary need for the psychiatric history. Defendant appealed, and we affirmed the court's denial of the testimonial privilege in the narrow context of a criminal child sexual abuse prosecution.

Hence, **Burtrum** is distinguishable. First, it was decided before **Jaffee** and acknowledged the split in the circuits over recognition of a psychotherapist/client privilege. Second, **Burtrum** addressed only the narrow issue whether to recognize the privilege in a criminal child sexual abuse context. To resolve that question within those contours, we held under a balancing of the need to protect this vulnerable segment of society, minor victims often intimidated by the legal system and fearful of testifying, against the quest for relevant evidence in the prosecution of child abuse cases, "that significant evidentiary need compels the admission of this type of relevant evidence in child sexual abuse prosecutions." *Id.* at 1302. That is, a subset of the public good, the

welfare of children, presented the sort of situation *Jaffee* anticipated.[3]  However, *Burtrum*'s analysis cannot be extended here.

We therefore hold upon the record before us the psychotherapist-patient privilege announced in *Jaffee* is available to protect Mr. Glass' statements from compelled disclosure under Rule 501 of the Federal Rules of Evidence.  Thus, on remand, the district court must proceed under Fed. R. Evid. 104(a) to determine whether, in the context of this case, the threat was serious when it was uttered and whether its disclosure was the only means of averting harm to the President when the disclosure was made.  In particular, the court will want to hear Dr. Darbe's opinion of the seriousness of the threat as well as the opinion of any appropriate authority who deals with the protection of the President.  The plea of guilty is **VACATED**, and the cause is remanded for further proceedings.

---

[3]Similarly, we have recognized an exception to the marital privilege.  In *United States v. Bahe*, No. 96-2174, 1997 WL 705367 (10th Cir. N.M.), we exercised the "reason and experience" granted by Fed. R. Evid. 501 and "recognize[d] an exception to the marital communications privilege for spousal testimony relating to the abuse of a minor child within the household."