**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4198**

———————

KIM KINDER,

            Appellant,

        v.

MICHAEL L. WHITE,

            Defendant – Appellee,

        and

UNITED STATES OF AMERICA,

            Plaintiff.

———————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.   Thomas E. Johnston, District Judge.  (2:12-cr-00221-1)

———————

Argued:  October 30, 2013                    Decided:  April 22, 2015

———————

Before TRAXLER, Chief Judge, WYNN, Circuit Judge, and George L. RUSSELL, III, United States District Judge for the District of Maryland, sitting by designation.

———————

Reversed by unpublished opinion.  Chief Judge Traxler wrote the majority opinion, in which Judge Russell joined.  Judge Wynn wrote a dissenting opinion.

———————

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.   James

McCall Cagle, Charleston, West Virginia, for Appellee. **ON BRIEF**: Mary Lou Newberger, Federal Public Defender, Lex A. Coleman, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

TRAXLER, Chief Judge:

Kim Kinder was the government's primary witness at trial against Michael White, who was charged with arson-related offenses arising from an October 2009 fire that destroyed a duplex apartment building that White owned in Van, West Virginia. See United States v. White, 771 F.3d 225 (4th Cir. 2014). The district court granted White's pretrial motion for production of Kinder's mental health records for use during cross-examination, rejecting the argument that the records were protected from disclosure by the psychotherapist-patient privilege. See Jaffee v. Redmond, 518 U.S. 1, 15 (1996). We conclude that the district court's order of disclosure was in error. To the extent the district court has retained any of Kinder's mental health records, the court is required to return or destroy them.

## I.

Shortly before White was indicted for conspiring with Kinder and Kinder's husband to burn White's duplex for the insurance proceeds, Kinder pled guilty to a one-count information charging her with conspiracy to commit arson in violation of 18 U.S.C. § 844(i). In response to the district court's questions during the plea hearing, Kinder told the court that she was taking numerous medications, including anti-depressants, anti-anxiety drugs, and muscle relaxers. Kinder

3

also revealed to the court she had received, within the preceding ten years, extensive psychiatric treatment. Kinder claimed that she had been diagnosed with bipolar disorder and schizophrenia. Kinder also explained that during that time period, she was admitted—at least once involuntarily—as an inpatient to four different hospital mental health units; the most recent of these mental health admissions had occurred approximately one year before the plea hearing.

Based on the information revealed by Kinder to the judge during her plea hearing, White filed a pre-trial motion under Criminal Rule 17(c) seeking "early production" of Kinder's medical records maintained by each of the four hospitals where Kinder received inpatient treatment. Specifically, White wanted each hospital to produce any document "relate[d] to Kim Kinder's psychiatric history, diagnosis, treatment and drug usage and abuse." J.A. 18. In support, White relied on a West Virginia statute permitting access to confidential mental health records if a court determines the relevance of such information "outweigh[s] the importance of maintaining . . . confidentiality." W. Va. Code § 27-3-1(b)(3). The government opposed production of such documents, arguing that Kinder's mental health records were protected from disclosure by the therapist-patient privilege recognized by the Supreme Court in Jaffee. See 518 U.S. at 15. Without objection, Kinder

4

intervened in the motion and filed an objection through counsel, adopting the government's argument with regard to privilege and noting further that White did not need the records for impeachment purposes since her mental health history was already a matter of public record in the transcripts of her plea colloquy. Kinder also appeared at the hearing on White's pre-trial motion and expressly invoked the therapist-patient privilege.[1] The district court, relying on the West Virginia statute, found "that the requested documents [were] sufficiently relevant . . . to warrant in camera review," J.A. 91, to determine if White's evidentiary need "outweigh[ed] the importance of maintaining [Kinder's] confidentiality," W. Va. Code § 27-3-1(b)(3). Thus, the district court entered a preliminary order directing each of the four hospitals to produce Kinder's mental health records to the district court alone for an in camera determination of admissibility.

After conducting its in camera review, the district court determined that to the extent the hospital records revealed any communications from Kinder to, or any diagnoses from, her psychiatrists, they fell within the scope of the patient-

---

[1] The parties agreed below that Kinder did not "waive[] her privilege by responding to the [district court's] questions at the plea hearing." J.A. 109.

therapist privilege.[2] The district court then "turn[ed] to the question of whether the privilege may be overcome by the assertion of [White's] constitutional right to the confidential materials." J.A. 111. Observing that the psychotherapist-patient privilege recognized in Jaffee is not absolute, see 518 U.S. at 18 n.19, the district court concluded that "[t]he psychotherapist-patient privilege contemplates an exception where necessary to vindicate a criminal defendant's constitutional rights." J.A. 119. And, having concluded such an exception exists, the district court considered whether Kinder's privacy rights protected by the privilege should give way either to White's Sixth Amendment right to effectively confront the witnesses against him or to his right to a fundamentally fair trial under the Due Process Clause of the Fifth Amendment. Although the district court decided that White

_____

[2] The district court also concluded that there were "significant portions" of Kinder's records that did not come within the scope of the therapist-patient privilege. J.A. 109. For example, the district court determined that the privilege did not protect any information provided by Kinder to emergency room "triage" staff during the admitting process regarding her mental health history or the particular reason for her visit. J.A. 110. Nonetheless, the district court did not order the disclosure of such records, finding that Kinder's "self-reported mental health history" during these "triage assessments" was largely "identical to the history provided publicly" during her plea hearing and therefore cumulative. J.A. 110. Accordingly, we need not address whether information passed along for purposes of a "triage assessment" would fall within the privilege.

was not entitled to Kinder's mental health records in order to vindicate his rights under the Confrontation Clause, the court concluded that White could obtain the records under the Due Process Clause. The court reasoned that because Kinder was the "central government witness against [White] and the . . . case may well hinge on her credibility," J.A. 123, White's right to a fundamentally fair trial entitled him to disclosure of mental health records that were otherwise protected by the psychotherapist-patient privilege. Accordingly, the district court ordered the disclosure under seal of specified documents that "cast[] substantial doubt on [Kinder's] mental acuity during the time of the purported conspiracy," J.A. 124, and raised questions about Kinder's state of mind when she was testifying before the grand jury and cooperating with the government's investigation of White.[3]

## II.

Kinder argues that in deciding whether her mental health records were protected from disclosure by the psychotherapist-patient privilege, the district court engaged in the type of

---

[3] The district court indicated that "[w]ith the exception of the limited disclosures the Court makes herein, these documents will not be placed in the record unless a higher court orders otherwise. The select documents the Court deems subject to disclosure are provided under seal to provide limited access to the parties to this case only, not the public at large." J.A. 125.

balancing analysis expressly rejected by the Supreme Court in Jaffee. We review a district court's "evidentiary rulings, including rulings on privilege, for abuse of discretion," but we review "factual findings as to whether a privilege applies for clear error, and the application of legal principles de novo." United States v. Hamilton, 701 F.3d 404, 407 (4th Cir. 2012). By definition, an abuse of discretion occurs if the court commits "[a]n error of law." United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009). We agree with Kinder that the court's use of the balancing approach was erroneous and that its decision to disclose Kinder's mental health records therefore amounted to an abuse of discretion.

## A.

Under Federal Rule of Evidence 501, matters of privilege in federal courts are to be resolved based on the common law "as interpreted by United States courts in the light of reason and experience" unless it is contrary to the "United States Constitution," a "federal statute," or the "rules prescribed by the Supreme Court." In Jaffee, the Supreme Court resolved a circuit split when it "recognize[d] a psychotherapist privilege under Rule 501" in the context of a § 1983 excessive force action. 518 U.S. at 7. The Court concluded that a social worker's notes from her counseling sessions with the defendant police officer were protected by the psychotherapist-patient

8

privilege from disclosure to the plaintiff for use in cross-examination. The Supreme Court reasoned that "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust" and that "the mere possibility of disclosure" of "confidential communications made during counseling sessions" could hinder productive therapy. Id. at 10. "By protecting confidential communications between a psychotherapist and her patient from involuntary disclosure, the . . . privilege thus serves important private interests." Id. at 11. Most importantly, the Court found that, like other testimonial privileges, the psychotherapist privilege serves the greater public interest by facilitating effective mental health care – "a public good of transcendent importance." Id.[4] The Court concluded that a "privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence.'" Id. at 9–10 (quoting Trammel v. United States, 445 U.S. 40, 51 (1980)). In other words, the public benefit produced by the recognition of the

---

[4] The Supreme Court explained that "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." Jaffee v. Redmond, 518 U.S. 1, 11 (1996).

9

psychotherapist-patient privilege is sufficiently weighty to trump the cost to the administration of justice of precluding the use of relevant evidence.

Of course, like other testimonial privileges, the psychotherapist-patient privilege is not absolute. The Court recognized that the privilege has limits but left the delineation of boundaries for future cases: "Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way." Id. at 18 n.19. The Court hinted at one potential exception—where "a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." Id. Circuit courts, however, have disagreed over when a "dangerous patient" exception to the privilege would apply, if at all. See United States v. Glass, 133 F.3d 1356, 1360 (10th Cir. 1998) (applying the Jaffee rule in a criminal case, and creating a narrow exception to the rule where "disclosure [is] the only means of averting [imminent] harm"); cf. United States v. Chase, 340 F.3d 978, 992 (9th Cir. 2003) (en banc) (refusing to recognize a dangerous-patient exception to the Jaffee rule).

B.

In ordering the partial disclosure of Kinder's psychiatric records, the district court concluded that an exception to the

10

psychotherapist-patient privilege must be made "where [the privileged information is] necessary to vindicate a criminal defendant's constitutional rights." J.A. 119. And in this particular case, the district court decided that because Kinder was the star witness for the prosecution, it was necessary for White to have this otherwise privileged evidence for impeachment purposes in order to fully exercise his Fifth Amendment right to a fundamentally fair trial.

In our view, this conclusion is demonstrably at odds with both Jaffee and basic principles underlying the recognition of testimonial privileges. All common law testimonial privileges are inherently "in derogation of the search for truth," United States v. Nixon, 418 U.S. 683, 710 (1974); that is, privileges constitute exceptions to the baseline rule "that the public . . . has a right to every man's evidence." United States v. Bryan, 339 U.S. 323, 331 (1950) (internal quotation marks omitted). "New or expanded privileges may be recognized only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." United States v. Sterling, 724 F.3d 482, 502 (4th Cir. 2013) (internal quotation marks omitted) (emphasis added). Thus, a privilege must "serve[] public ends," Upjohn Co. v. United States, 449 U.S. 383, 389 (1981), that are more

11

important than the effect of denying the public the use of relevant, probative evidence. Accordingly, when the Court recognizes or expands a privilege under Rule 501, it necessarily has already determined that the privilege in question "promotes sufficiently important interests to outweigh the need for probative evidence." University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990) (internal quotation marks omitted).

Jaffee applied this reasoning, holding that a "privilege protecting confidential communications between a psychotherapist and her patient promotes sufficiently important interests to outweigh the need for probative evidence." 518 U.S. at 9–10 (internal quotation marks omitted) (emphasis added). Thus, before recognizing the existence of the psychotherapist privilege under Rule 501, the Supreme Court in Jaffee first compared the interests promoted by the privilege against interests promoted by the general rule that the public is entitled to "every man's evidence." But now that the psychotherapist privilege has been recognized, it would be both counterproductive and unnecessary for a court to weigh the opponent's evidentiary need for disclosure any time the privilege is invoked. Indeed, Jaffee explicitly rejects such an ad hoc balancing approach because it would frustrate the aim of the privilege by making its application uncertain: "Making the promise of confidentiality contingent upon a trial judge's later

12

evaluation of the relative importance of the patient's interest in privacy and the <u>evidentiary need</u> for disclosure would eviscerate the effectiveness of the privilege." <u>Id.</u> at 17 (emphasis added).

Here, the district court appears to have employed precisely such a weighing of Kinder's privacy interest versus White's evidentiary need. White's motion for disclosure was made pursuant to a West Virginia statute that allows for disclosure of privileged medical information if the court finds that "the information is sufficiently relevant . . . to outweigh the importance of maintaining the confidentiality." W. Va. Code § 27-3-1(b)(3). The district court's preliminary order directing production of the records for <u>in camera</u> review relied expressly on the West Virginia statute. The district court's final order of disclosure, while acknowledging <u>Jaffe</u>'s "ardent[] reject[ion of] this context-specific, ad hoc approach to the applicability of the privilege," J.A. 111, ordered the disclosure of privileged mental health records based on the "perfect storm of facts" before it, including most significantly White's need to challenge the credibility of "<u>the</u> central government witness," J.A. 123. Such an analysis runs contrary to <u>Jaffee</u>, which made clear the federal psychotherapist-patient privilege "is not rooted in any constitutional right of privacy but in a public good which overrides the quest for relevant evidence; the

13

privilege is not subject to a balancing component." Glass, 133 F.3d at 1358 (internal quotation marks omitted).

We find no basis in the record to justify disclosure of Kinder's records that fall within the protective scope of the psychotherapist privilege. Accordingly, we conclude that the district court's order of disclosure was in error. We reverse the court's ruling and direct that Kinder's mental health records, to the extent the district court has retained copies thereof, be returned to the hospitals that produced the records or be destroyed.

### III.

Regarding the issue of waiver, given the novelty of this area of the law and the fact that it has never been pursued—not in this court on appeal or in the district court below—we decline to address it. In fact, in the proceedings before the district court, White's counsel expressly told the district court that White did not take the position that Kinder's statements at her Rule 11 hearing constituted a waiver of the privilege:

> THE COURT: Are you saying that anything that you learned through her statements in her plea hearing, you should be allowed to cross-examine her on?
>
> [WHITE'S COUNSEL]: Yes, sir, I do.
>
> THE COURT: All right. But you're not saying that she waives the privilege and, therefore, you get access to

14

the records because of what she said in the plea hearing?

[WHITE'S COUNSEL]: No. What I'm saying is that's what I understand this hearing to be about, that whether or not this defendant, in connection with his right of confrontation, is allowed to review those notes made as they pertain to a diagnosis and treatment.

THE COURT: Well, I don't think you answered my question there and I want to be very clear on this.

[WHITE'S COUNSEL]: Okay.

THE COURT: . . . [T]he purpose of this hearing is much broader than that. I want to have a full discussion of this whole issue, but . . . my specific question there was, are you arguing that because she disclosed a small amount of information at the plea hearing . . . that she has, therefore, waived the privilege with regard to all these records?

[WHITE'S COUNSEL]: No, I'm not. I don't say that.

J.A. 49 (emphasis added). Hence, the district court specifically noted in its order that whether Kinder waived her privilege was a non-issue, as "both parties to this case agree that Kinder has not waived her privilege by responding to the Court's questions at the plea hearing." J.A. 109.

Absent unusual circumstances, this court does not address arguments on appeal that were not raised in the district court. See Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999); see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 267 (5th Cir. 2014) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal."

15

(internal quotation marks omitted)). And here we are presented with an even more compelling basis not to address the issue of waiver than White's failure to argue it below—White's contrary assertion to the district court disavowing any reliance on a waiver theory.

On top of that, White has not even argued on appeal that this court should affirm on the basis of waiver. White does not mention waiver in his brief, except to muse in passing that the district court "could have properly found" that Kinder waived the privilege, Brief of Appellee at 11 (emphasis added), even though White took the opposite position below. This fleeting mention of waiver in a single sentence couched in conditional terms is not an argument—it's an observation. It is not the practice of this court to consider an argument that has not been developed in the body of a party's brief or identified in the headings. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (single "conclusory remark" in brief "insufficient" to constitute an argument); see also Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . will be deemed waived."). "[A] party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." Hatley v. Lockhart, 990 F.2d 1070, 1073 (8th Cir. 1993) (internal quotation marks omitted)).

16

We recognize that, in limited circumstances, this court may affirm a district court's ruling on "any theory, argument, or contention which is supported by the record." Blackwelder v. Millman, 522 F.2d 766, 771 (4th Cir. 1975) (internal quotation marks omitted). The court does not follow this practice, however, when doing so "unfairly prejudice[s] the appellant in [the] presentation of his case." United States v. Gould, 741 F.2d 45, 50 n.5 (4th Cir. 1984). Even if White were actually urging us to consider a waiver theory—which he is not—affirming on the basis of waiver in this case would be highly prejudicial to Kinder. In light of White's representation to the district court that "Kinder has not waived her privilege by responding to the Court's questions at the plea hearing" and his subsequent choice not to brief the issue of waiver on appeal, Kinder had absolutely no reason to develop an argument on appeal that her answers to the court's questions during her plea colloquy constituted a waiver of the privilege with respect to her records.

In sum, it would be most unusual for this court to address sua sponte a non-jurisdictional issue rejected by both parties below and not argued or briefed on appeal. But, even if we were to reach the merits, we would have serious doubts that answers

17

given by a defendant to a judge's questions during a Rule 11 colloquy would amount to a voluntary waiver.

REVERSED

WYNN, Circuit Judge, dissenting:

Kim Kinder and Michael White conspired to commit arson. Kinder cooperated with the government, and the government, in turn, charged Kinder with only one arson-related offense, to which she pled guilty. The government then agreed to argue for a reduced sentence for Kinder.

At her plea hearing, Kinder testified at length and in detail about her mental health diagnoses, hospitalizations, and treatments. Kinder's testimony went well above and beyond what the district court asked. And not once during her testimony did Kinder, or her counsel on her behalf, raise the issue of privilege.

Ultimately, Kinder served as the star witness in the government's case against White, who was charged with several arson-related offenses. As part of his defense, White sought Kinder's mental health records from hospitalizations he learned about at Kinder's plea hearing in open court. Yet, unlike in her own proceeding, in White's criminal proceeding, Kinder asserted the psychotherapist-patient privilege in an attempt to block White's counsel from gaining access to records related directly to her plea hearing testimony.

By liberally discussing her mental health issues in her extensive open-court testimony in her own proceeding, Kinder waived her psychotherapist-patient privilege as to the limited

19

and directly-related records that the district court released in White's case. Accordingly, because I agree with the district court's grant of White's motion for early production of records, I respectfully dissent.

I.

White, a West Virginia businessman, owned a two-unit duplex near Van, West Virginia. In 2009, White experienced financial difficulties. Among them, White was no longer receiving income from his duplex: His tenants no longer paid their rent.

White "express[ed] this frustration to Kim Kinder, an across-the-street neighbor with whom White was carrying on an affair." United States v. White, 771 F.3d 225, 228 (4th Cir. 2014). "White purchased a fire-insurance policy" that "provided $80,000 coverage for the duplex and $20,000 for its contents." Id. He then asked Kinder and her husband "to burn it down as soon as possible." Id. White gave the Kinders some money and told them that he had evicted the tenants. On October 16, 2009, after a couple of trips to the duplex, the Kinders set it on fire.

White recovered the full proceeds on the insurance policy he had taken on the duplex, plus an additional amount for major appliances. And he ultimately paid about $2000 to the Kinders.

20

In June 2010, West Virginia police contacted Kinder. After initially denying involvement in the arson, Kinder confessed and agreed to cooperate with the authorities. Kinder made "a recorded telephone call to White in which they discussed the fire and White's payment of money to the Kinders. During the call, Kinder made statements suggesting White's involvement in the arson which White did not deny." Id.

Kinder ultimately pled guilty to one count of conspiracy to commit arson in violation of 18 U.S.C. § 844(i). The government, in turn, "agree[d] to file a motion in Ms. Kinder's case requesting the Court reduce her sentence based on the substantial assistance she has already provided in the criminal investigation and prosecution of another." Plea Agreement at 4, United States v. Kinder, No. 2:12-cr-00114 (S.D. W. Va. Mar. 5, 2012).

During her initial plea hearing, Kinder told the district court that she took numerous medications, including anti-depressants, anti-anxiety drugs, and muscle relaxers. Kinder also revealed that she had been diagnosed with bipolar disorder and schizophrenia. She did not know, however, which drugs treated which conditions because her treatment providers "never told [her] that this is what I am prescribing you for schizophrenia." Tr. of Plea Hr'g at 12, United States v. Kinder, No. 2:12-cr-00114 (S.D. W. Va. June 19, 2012).

21

Kinder detailed her extensive psychiatric issues and treatments well beyond what would have been necessary simply to answer the district court's questions. She explained, for example, that "it was just – just pretty much the way my life has went for the past 26 years, is in and out of hospitals and emergency rooms and what – because I didn't know, they couldn't tell me what was wrong with me. I was having panic attacks and they were telling me I just had a little anxiety and send me home . . . ." Id. at 11. Kinder also reported that she had repeatedly attempted suicide.

Kinder detailed her voluntary and involuntary admissions to the "psych wards" of four different hospitals, the most recent admission occurring only about a year before the plea hearing. Id. at 7. She identified those hospitals as Logan Regional Hospital, St. Mary's Hospital, Thomas Memorial Hospital, and Highland Hospital. And she identified at least one of her treating physicians by name—Dr. Fink at St. Mary's. Kinder also shared, for example, that she felt her doctors did not "really care[] enough to sit down and find out what was going on and most . . . would just, you know, write me more drugs and send me home." Id. at 13.

22

Not once during any of this did Kinder express privilege concerns.[1]  At no point during her extensive testimony did either Kinder or her counsel, for example, seek a side bar or otherwise raise the specter of the psychotherapist-patient privilege.  And "counsel for [White] was present in the public gallery during the proceeding to hear this entire discussion."  J.A. 97-98.

Based on the information revealed by Kinder during her plea hearing, White filed a motion for early production of records in his own criminal proceeding.  He sought Kinder's treatment records from each of the four hospitals Kinder identified at her plea hearing.

The government opposed White's motion, arguing that Kinder's records were protected from disclosure by the psychotherapist-patient privilege recognized in Jaffee v. Redmond, 518 U.S. 1 (1996).  Kinder then intervened and also objected to the motion.

Initially, the district court found "that the requested documents [were] sufficiently relevant . . . to warrant in camera review."  J.A. 91.  The district court therefore entered

---

[1] On the contrary, Kinder suggested that she had repeatedly shared the information with others before, lamenting that she "should probably write these [details about her mental health diagnoses and treatments] down  because people ask me a lot." Tr. of Plea Hr'g at 12, United States v. Kinder, No. 2:12-cr-00114 (S.D. W. Va. June 19, 2012).

23

a preliminary order directing each of the four hospitals to produce Kinder's records solely to the court.

After conducting its review, the district court determined that to the extent the hospital records revealed communications from Kinder to, or diagnoses from, her psychiatrists, they fell within the scope of the psychotherapist-patient privilege. Nevertheless, observing that the psychotherapist-patient privilege recognized in Jaffee is not absolute, the district court concluded that the privilege "contemplates an exception where necessary to vindicate a criminal defendant's constitutional rights." J.A. 119.

The district court found such an exception warranted in this case, concluding that White should obtain Kinder's records under the Due Process Clause. The district court saw the matter as the "perfect storm of facts" justifying an exception—including Kinder's role as a co-conspirator, Kinder's self-interest in assisting the government (in the hope of reducing her own sentence), the importance of Kinder's testimony and credibility to the government's case against White, and Kinder's admission to various mental health diagnoses "that potentially implicate her ability to accurately perceive, process, and relate information." J.A. 123. Accordingly, the district court granted White's motion for early production of records and ordered limited disclosure.

24

At his trial,[2] White used the disclosed records to cross-examine Kinder.  But the district court ruled that the records could not be introduced into evidence.  Ultimately, the jury convicted White on several arson-related counts, and the district court sentenced him to concurrent 78-month terms of imprisonment on each count.  White, 771 F.3d at 228-29.  White appealed, and his case has been resolved.  Id.  Only Kinder's appeal of the district court's records-related ruling is before us now.

## II.

Kinder argues that in deciding whether her mental health records were protected from disclosure by the psychotherapist-patient privilege, the district court engaged in the type of balancing analysis the Supreme Court expressly rejected in Jaffee.  White counters that the district court properly applied the distinguishable Jaffee, that the district court could have deemed the privilege waived by Kinder's discussing her mental health treatment in open court, and that the district court also

---

[2]  The government dismissed its first indictment against White and brought a second one because Kinder "contradicted the facts she had provided earlier" as the government's star witness in its case against White.  J.A. 98.  The trial was based on the second indictment.

could have found that the records it released fell outside of any privilege.

On appeal, "[w]e review factual findings underlying an attorney-client privilege ruling for clear error, and we review the application of legal principles de novo." In re Grand Jury Subpoena, 341 F.3d 331, 334 (4th Cir. 2003). Upon careful consideration, I must agree with White: Kinder waived her privilege in the subject matter of the released records.

A.

As an initial matter, I do not believe that waiver precludes us from reaching the privilege-waiver issue. I "certainly agree" that White "did not 'pellucidly articulate this theory' below." Quicken Loans Inc. v. Alig, 737 F.3d 960, 964-65 (4th Cir. 2013) (quoting Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 245 n. 2 (2000)). Nevertheless, while White did not call his argument below waiver, it had the stuff of waiver—so much so that opposing counsel recognized it as such and railed against it. J.A. 65 (stating that White's counsel argued "that in as much as Ms. Kinder has spoken about some of her history in court. . . there may be some – a waiver or some way to think that there is no – there in no expectation of privacy here" and arguing against the same). Further, on appeal, White contends that "the District Court could have properly found that Ms. Kinder had waived any

26

privilege she might have had in these records by talking about her hospitalizations . . . in open court, thus she had no reasonable expectation of privacy after that point." Appellee's Br. at 11.

Moreover, "'we review judgments, not opinions' and, consequently, we are 'entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below.'" Everett v. Pitt Cnty. Bd. of Educ., 678 F.3d 281, 291 (4th Cir. 2012) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 643 n. 10 (4th Cir. 2011)). Here, the district court's judgment granted White's motion for early production of records. Though I would grant the motion on a different basis than that of the district court, the judgment—granting White's motion—would remain the same, and I therefore would affirm.

Accordingly, "under the facts and circumstances of this case [I would] reach the [privilege-waiver] argument." Quicken Loans, 737 F.3d at 965.

### B.

In 1996, with Jaffee, the Supreme Court resolved a circuit split by "recogniz[ing] a psychotherapist privilege." 518 U.S. at 7. The Court concluded that a social worker's notes from her counseling sessions with a police officer who had been sued for use of excessive force were protected from disclosure by the

27

psychotherapist-patient privilege. The Supreme Court reasoned that "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust" and that "the mere possibility of disclosure" of "confidential communications made during counseling sessions" could hinder productive therapy. Id. at 10.

The Supreme Court found that, like other testimonial privileges, the psychotherapist privilege serves the greater public interest by facilitating effective mental health care—"a public good of transcendent importance." Id. The Court concluded that a "privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence.'" Id. at 9–10 (quoting Trammel v. United States, 445 U.S. 40, 51 (1980)).

Nevertheless, because such privileges "'impede[] the full and free discovery of the truth,'" they must be "narrowly construed.'" In re Grand Jury Subpoena, 341 F.3d at 335 (quoting Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). They are thus "'recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" Id.

Accordingly, like other privileges, the psychotherapist-patient privilege is not absolute. The Supreme Court noted that "[a]lthough it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way." Jaffee, 518 U.S. at 18 n.19. The Supreme Court identified one such potential exception—where "a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." Id.

Finally, the Supreme Court recognized that a patient may waive the psychotherapist-patient privilege. Id. at 15 n.14 ("Like other testimonial privileges, the patient may of course waive the protection."). Thus, this Court later held that "[a] patient may waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it. A waiver may occur when the substance of therapy sessions is disclosed to unrelated third parties, or when the privilege is not properly asserted during testimony." United States v. Bolander, 722 F.3d 199, 223 (4th Cir.), cert. denied, 134 S. Ct. 549 (2013) (citations and parentheticals omitted).

In Bolander, the patient "failed to assert the psychotherapist patient privilege during his . . . deposition. During that deposition, [he] was asked questions about his participation in [a sex offender treatment program]. He did not

assert any privilege with respect to the information he provided in the [program], including the documents generated by the program. Instead, [he] openly discussed his participation . . . ." 722 F.3d at 223. We held that "[b]y answering questions without asserting the psychotherapist patient privilege, [the patient] waived any privilege he may have enjoyed." Id.

Our analysis in Bolander relied on Hawkins, 148 F.3d 379, a case involving the longstanding attorney-client privilege, to which the Supreme Court, too, analogized the psychotherapist-patient privilege. See Jaffee, 518 U.S. at 11. In Hawkins, we noted that the "client is the holder" of the privilege, as is the patient in the psychotherapy context, "and can waive it either expressly, or through conduct." 148 F.3d at 384 n.4 (citations and parentheticals omitted); see also Koch v. Cox, 489 F.3d 384, 391 (D.C. Cir. 2007) (noting that a plaintiff "waives the psycho-therapist-patient privilege when . . . he does the sort of thing that would waive the attorney-client privilege").

In Hawkins, a former husband alleged that his former wife illegally recorded telephone conversations between him and his girlfriend. In her deposition, the former wife answered questions about whether her lawyer had advised her regarding the wiretap:

30

Q: Is it true or not that Larry Diehl, in his capacity as your [divorce] attorney, told you to take a wiretap off the phone at the marital residence?

A: No, sir. Because I wouldn't have discussed that with him, since it didn't happen. So, therefore, he would have no need to make mention of that to me.

Hawkins, 148 F.3d at 381. We observed that "[a]lthough the question asked during the deposition clearly elicited information regarding confidential communications [the former wife] may have had with [her lawyer], and was objectionable on its face on the ground of attorney-client privilege, neither [the former wife] nor her attorney asserted an objection." Id.

In answering the question without raising a privilege objection, the former wife "waived the privilege as to the subject matter of the phone tap." Id. at 384. And "[b]ecause the privilege had been impliedly waived by [the former wife], [the former husband] was entitled to question [the former wife's lawyer] regarding the alleged wiretap." Id.

As Hawkins illustrates, waiver through conduct, or "implied waiver," "occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege." Id. at 384 n.4; see also, e.g., Hanson v. United States Agency for Int'l Dev., 372 F.3d 286, 294 (4th Cir. 2004) ("Implied waiver occurs when a party claiming the privilege has voluntarily disclosed confidential information on a given subject matter to a party

31

not covered by the privilege."). This is because such a disclosure "vitiates the confidentiality that constitutes the essence of the . . . privilege." Hawkins, 148 F.3d at 384 n.4. And disclosure "not only waives the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure." Id.

The reasoning behind waiver in such circumstances is intuitive: "[A] judicial system that ignores publicly known information or information known to an adversary risks losing its legitimacy as a truth-seeking process." Privileged Communications, 98 Harv. L. Rev. 1450, 1646 (May 1985). Indeed, "[o]ver time, public confidence in our legal system might be eroded . . . by a general perception that the courts systematically exclude probative evidence" or the potential for "public disagreement with the factfinder's decision." Id. at 1646-47. It has, therefore, been suggested that "all disclosures that are likely to lead to privileged material becoming either public or accessible to the privilege-holder's legal adversary should be treated as waiving the privilege with respect to the matter disclosed." Id. at 1647.

In deeming communications impliedly waived, this Circuit has found waiver even in closed proceedings and pursuant to a subpoena. For example, in United States v. Bollin, we held that the defendant waived the attorney-client privilege as to certain

32

transactions and communications with his attorney where he testified "before the grand jury pursuant to a subpoena" about those transactions and communications. 264 F.3d 391, 412 (4th Cir. 2001).

We have also recognized implied waiver in the context of communications that predated the commencement of the litigation where the waiver issue had been raised. For example, in In re Grand Jury Subpoena, we held that the defendant waived the attorney-client privilege regarding whether a lawyer had aided him in answering a question on an immigration form when, in an earlier conversation with Federal Bureau of Investigation agents, the defendant had reported that he had answered the form question as he did on the advice of an attorney. 341 F.3d 331. And in In re Grand Jury Subpoena, we indicated that while no "broad-based" waiver occurred, a client's identity and certain documents identified in a subpoena were no longer confidential, and any privilege associated with them was waived, when the client authorized his attorney to convey to the lawyer representing parties threatening suit his motives for seeking legal advice. 204 F.3d 516, 522 (4th Cir. 2000).

Viewing these cases holistically, they indicate that in this Circuit, privileges such as the psychotherapist-patient privilege must be construed narrowly and may be waived, including impliedly. And implied waiver may be effectuated by

33

disclosure to third-parties before the litigation at hand commences and by providing information in response to a court command such as a subpoena.

C.

Turning now to the case at hand, during her plea hearing in open court, Kinder told the district court that she took numerous medications, including anti-depressants, anti-anxiety drugs, and muscle relaxers. Kinder revealed that she had been diagnosed with bipolar disorder and schizophrenia but that she did not know which drugs treated which conditions because her treatment providers "never told [her] that this is what I am prescribing you for schizophrenia." Tr. of Plea Hr'g at 12, United States v. Kinder, No. 2:12-cr-00114 (S.D. W. Va. June 19, 2012).

Kinder detailed—well beyond what the district court asked—her extensive psychiatric issues and treatments. She explained that her metal health deteriorated after the birth of her son and that "it was just – just pretty much the way my life has went for the past 26 years, is in and out of hospitals and emergency rooms and what – because I didn't know, they couldn't tell me what was wrong with me. I was having panic attacks and they were telling me I just had a little anxiety and send me home . . . ." Id. at 11. Kinder also reported multiple suicide attempts.

34

Kinder detailed her admissions to four hospital "psych wards": Logan Regional Hospital, St. Mary's Hospital, Thomas Memorial Hospital, and Highland Hospital. Id. at 7. She identified at least one of her treating physicians by name. Kinder also shared, for example, that she felt her doctors did not "really care[] enough to sit down and find out what was going on and most . . . would just, you know, write me more drugs and send me home." Id. at 13.

At no point during her extensive testimony did Kinder or her counsel express privilege concerns. Not once did either, for example, seek a side bar. Meanwhile, "counsel for [White]"—and who knows who else—"was present in the public gallery during the proceeding to hear this entire discussion." J.A. 97-98. Further, the transcript of "this entire discussion" is a filed document not under seal and thus publicly available for all to see.

White's motion for early production of records was based on the information Kinder revealed during her plea hearing. He sought only limited treatment records, only from each of the four hospitals Kinder identified at her plea hearing, and only for use in his related criminal proceeding.

With her extensive testimony in open court, Kinder "vitiate[d] the confidentiality that constitutes the essence" of the psychotherapist-patient privilege as to the limited records

35

White sought.  Hawkins, 148 F.3d at 384 n.4.  She "voluntarily disclosed confidential information on [the pertinent] subject matter to a party not covered by the privilege" and thereby impliedly waived it.  Hanson, 372 F.3d at 294.[3]

In my view, the fact that the testimony that constituted implied waiver here was prompted by the district court's (limited) questioning is not dispositive.  Cf. Bollin, 264 F.3d at 412 (holding that the defendant waived the attorney-client privilege as to certain transactions and communications with his attorney where he testified "before the grand jury pursuant to a subpoena" about the same).  Nor is it dispositive that the testimony resulting in waiver predated the commencement of White's criminal proceeding.  See In re Grand Jury Subpoena, 341 F.3d 331 (holding that defendant waived the attorney-client privilege through an earlier conversation with federal agents); In re Grand Jury Subpoena, 204 F.3d at 522 (indicating that attorney-client privilege was waived by an earlier letter sent at client's request upon threat of a civil suit).

---

[3] Kinder also permitted the disclosure of her mental health records for purposes of her presentence report.  But the confidentiality of presentence reports—which routinely address "intensely personal matters" such as family history, mental health, and financial condition—"has always been jealously guarded."  United States v. Trevino, 89 F.3d 187, 192 (4th Cir. 1996).  I would thus decline any invitation to downgrade the presentence report's confidentiality here.

In sum, I conclude that by discussing at length, in detail, and without any hint of privilege concerns, her mental health problems and treatments in open court, Kinder extinguished the confidentiality of those subjects and thereby waived her ability to block White's access to directly-related records by claiming privilege. The district court therefore did not err in authorizing a limited release of certain of Kinder's records to White for use in his related criminal proceeding.

## III.

For the reasons above, I would affirm the district court's grant of White's motion for early production of records. Accordingly, I respectfully dissent.